# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

KIRK DOUGLAS
An individual,

Plaintiff

v.

DEB HAALAND, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR,
In her official capacity.

Defendant.

---

## COMPLAINT AND REQUEST FOR JURY TRIAL

---

Kirk Douglas, through his attorneys, Steven L. Murray of Murray Law, LLC, asserts his allegations and claims against Defendant Deb Haaland, Secretary of the United States Department of Interior, in her official capacity.

This action is an employment discrimination and retaliation case about Defendant's treatment of Mr. Douglas based on his disability, and Defendant's retaliation against him for engaging in protected activity under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq. ["Rehabilitation Act" or the "Act"].

### I. PARTIES

1. Douglas, a male, is a United States citizen and resident of Dumont, Colorado, in Clear Creek County.

1

2. Defendant employs Douglas in the Office of Inspector General [OIG].

3. Douglas serves as a GS-13, Support Services Specialist, Office of Management, OIG, Lakewood, Colorado.

## II. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

5. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391.

6. At all times in issue, Douglas resided and worked in the Judicial District of this Court.

7. Deb Haaland is the Secretary of the United States Department of Interior, and she is the Defendant in her official capacity. The United States Department of the Interior is a federal executive department of the United States government.

8. Defendant conducts business in the Judicial District of this Court.

9. At all times at issue, Douglas was an employee of Defendant as defined by the Rehabilitation Act, and Defendant was an employer as defined by the Act.

## III. ADMINISTRATIVE PROCEDURES

10. Before filing this action, Douglas properly and lawfully exhausted all required EEO administrative prerequisites, procedures, and remedies.

11. On or about July 1, 2019, Douglas made initial contact with Defendant's internal EEO Counselor and participated in an initial interview with the EEO Counselor.

12. On or about September 25, 2019, the EEO Counselor issued to Douglas a Notice of Final Interview and a Notice of Right to File a Formal Complaint of Discrimination.

13. On September 30, 2019, Douglas filed his formal internal EEO complaint.

14. On October 24, 2019, Defendant accepted Douglas's claims under the Equal Employment Opportunity Commission's regulations in Title 29 Code of Federal Regulations (29 C.F.R.), Part 1614.

15. On November 7, 2019, Defendant granted Douglas's request to amend his accepted claims.

16. On April 1, 2020, Douglas requested a Final Agency Decision, and Defendant issued its Final Agency Decision on June 26, 2020.

17. On July 21, 2020 Douglas filed his appeal Final Agency Decision, of the Equal Employment Opportunity Commission, Office of Federal Operations.

18. Under 29 C.F.R. § 1614.407(d), a federal employee who has filed an individual complaint is authorized under the Rehabilitation Act to file a civil action in an appropriate United States District Court, after 180 days from filing an appeal with the Equal Employment Opportunity Commission if there has been no final decision by the Commission.

19. This action is timely and properly filed because Douglas filed his appeal with the Commission on July 21, 2020, and 180 days have passed without the Commission issuing a final decision.

## IV.   GENERAL ALLEGATIONS

20. Douglas has a distinguished record of military and federal civilian service.

21. Douglas is a disabled veteran of the United States Army.

22. Douglas served in the United States Army for four years, from 1987-1991.

23. Douglas received an honorable discharge from the United States Army in 1991.

24. Douglas has a United States veterans disability rating of 70% from the United States Department of Veterans Affairs.

25. Douglas's disability rating includes a 50% rating for Post-Traumatic Stress Disorder [PTSD].

26. Douglas has PTSD, a disability.

27. Douglas holds a Bachelor of Science degree and a Master of Business Administration degree.

28. Douglas has approximately ten years of service as a federal employee.

29. From approximately 2011-2015, Douglas worked for the Smithsonian Institution in Washington, DC.

30. In 2015, Douglas moved to Colorado to work as a GS-13 in the OIG with Defendant.

31. In Douglas's federal service, he has never been subjected to any disciplinary action, and he has consistently received positive performance appraisals.

32. In his military and federal civilian service, Douglas's service record, integrity, and credibility are of paramount importance.

33. Jamie DePaepe serves as an OIG Assistant Special Agent in Charge for Defendant.

31. When Douglas informed DePaepe of his disability status and his PTSD condition, DePaepe asked him if PTSD was really a "a thing."?

34. Douglas interpreted DePaepe's statement as questioning whether PTSD was a legitimate disability and whether he had PTSD as a disability.

35. In December 2018, Douglas's duties included closing Defendant's OIG office in Rapid City, South Dakota.

36. The period for closing the Rapid City office and Douglas's travel in issue was between December 19-21, 2018.

37. In the Rapid City office closing, DePaepe functioned in the role of a customer.

38. Douglas traveled to Rapid City and performed all of his duties correctly in this duty and assignment.

39. Douglas properly scheduled his travel for the Rapid City assignment and properly conducted his travel during the work.

40. Douglas followed the directions of DePaepe before, during, and after the Rapid City assignment.

41. Before, during, and after the Rapid City assignment, Douglas: (1) completed all work for which he was responsible; (2) completed all work requested of him by DePaepe, his federal co-workers, and any civilian personnel involved; (3) was available to perform all work necessary for the Rapid City office closing; (4) was

available to work with DePaepe and all persons (civilian and federal workers) involved in the office closing.

42. Before, during, and after the Rapid City assignment, Defendant approved Douglas's travel.

43. Douglas's first and second-level supervisors had minimal, in any, involvement in the Rapid City office closing. To the extent Douglas's supervisors had any role in his work on the Rapid City project, Douglas followed their directions.

44. Douglas did not engage in any improper conduct before, during, or after the Rapid City assignment.

45. Following Douglas's work on the Rapid City project, Defendant gave him two unsolicited cash awards.

46. On or about February 22, 2019, DePaepe requested an investigation of Douglas's conduct about the Rapid City assignment.

47. DePaepe's request for an investigation of Douglas was based on inaccurate statements about Douglas's conduct.

48. DePaepe's statements about Douglas's conduct were discriminatory, prejudicial, and damaging to Douglas.

49. On June 27, 2019, Defendant suspended Douglas from his position of Support Services Specialist for five (5) days without pay, for absence without leave and AWOL, and use government funds for personal travel. [suspension].

50. The totality of events surrounding the suspension, and the suspension decision, constitutes an unwarranted and discriminatory action.

51. Before the suspension, Douglas had a schedule consistent with his PTSD.

52. Before the suspension, Defendant permitted Douglas to arrive at work between 6-6:30 a.m. and leave between 3-4:00 p.m.

53. After the suspension, Defendant required Douglas to arrive at work between 8-8:30 a.m., rather than 6-6:30 am.

54. Following Defendant's modification of Douglas's work schedule, he presented documentation from a medical provider and formally requested a reasonable accommodation from Defendant about the hours of his schedule.

55. Defendant did not grant Douglas's reasonable request for an accommodation.

56. Following the suspension, Defendant imposed telework requirements on Douglas that were more restrictive than his telework requirements before the suspension.

57. In October 2019, Defendant gave Douglas the lowest performance rating he has received in his employment with Defendant.

58. As a direct, foreseeable, and proximate result of Defendant's unlawful, intentional discrimination and retaliation, Douglas suffered injuries and losses, including but not limited to loss of pay, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and the potential and/or actual loss of wages, earnings, income, benefits, and actual and/or potential retirement benefits.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM
### [Disability Discrimination]

59. Douglas incorporates and restates all allegations asserted as though fully

incorporated herein.

60. The Rehabilitation Act's application to federal sector employees under 29 U.S.C. § 791 et seq., incorporates the employment provisions of the Americans with Disabilities Act of 1990 and the American with Disabilities Amendments Act of 2008, as amended, 42 U.S.C. § 12101, et. seq., [collectively referenced as the ADA], and the EEOC regulations implementing the ADA and ADAA, including the prohibition against employment discrimination based on disability and liability standards. 29 C.F.R. § 1614.203(a)(1)(b).

61. References to the Rehabilitation Act herein incorporate the ADA.

62. Douglas was a qualified person with a disability under the Rehabilitation Act and ADA.

63. Douglas is a member of the protected class under the Rehabilitation Act and the ADA.

64. The Rehabilitation Act and the ADA make it unlawful to discriminate against a qualified individual based on disability.

65. Douglas is an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment position he holds with Defendant; and (2) possesses the requisite skill, experience, education, and other job-related requirements of the employment position he holds with Defendant.

66. The Rehabilitation Act and the ADA prohibit Defendant from discriminating against Douglas: (1) regarding his compensation, terms, conditions, or privileges of employment, because of his disability and/or (2) by limiting, segregating, or classifying

her in any way, which would deprive, or tend to deprive him of employment opportunities, or otherwise adversely affect his status as an employee, because of his disability.

67. Douglas has a disability under the Rehabilitation Act and the ADA.

68. Douglas has a physical or mental impairment that substantially limits one or more major life activities, including but not limited to sleeping, concentrating, and working.

69. Douglas suffers from PTSD.

70. Defendant engaged in unlawful, direct, and intentional disability discrimination against Douglas because of his disability, and/or because of his protected status as a qualified individual with a disability.

71. Defendant's cumulative treatment of Douglas, including the unwarranted investigation of his conduct, the suspension decision, the modification of his arrival hours which were designed to address his disability, the denial of his request for a reasonable accommodation, the adverse adjustment of his telework privileges, and the lower performance rating, constitutes intentional discrimination because of his disability and protected status under the Rehabilitation Act and the ADA.

72. Defendant discriminated against Douglas: (1) regarding his compensation, terms, conditions, or privileges of employment, because of his disability; and/or (2) by limiting, segregating, or classifying him in any way, which would deprive, or tend to deprive him of employment opportunities, or otherwise adversely affect his status as an employee, because of his disability.

73. Defendant's unlawful, intentional disability discrimination was initiated by, and/or approved by Defendant's officials and/or managers having specific knowledge of, or reason to know of Douglas's disability and the discriminatory actions in issue.

74. Defendant's treatment of Douglas constitutes intentional, unlawful disability discrimination, in violation of the Rehabilitation Act and the ADA.

## SECOND CLAIM
[Disability Discrimination - Regarded as Disabled]

75. Douglas incorporates and restates all allegations asserted as though incorporated herein.

76. The Rehabilitation Act and the ADA's definition of disability and discrimination include discrimination against a person based on the person being **regarded as** having a physical or mental impairment that substantially limits one or more major life activities of such individual.

77. A person meets the "being regarded as" requirement if the person establishes that he has been subjected to an action prohibited by the Rehabilitation Act and the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

78. Douglas meets the standard of being regarded as having a physical or mental impairment under the Rehabilitation Act and the ADA.

79. Defendant engaged in intentional, unlawful disability discrimination against Douglas based on Defendant regarding him as having a physical or mental impairment that substantially limits one or more of his major life activities of such individual.

## THIRD CLAIM
**[Disability Discrimination - Record of Disability]**

80. Douglas incorporates and restates all allegations asserted as though incorporated herein.

81. The Rehabilitation Act and the ADA's definition of disability and discrimination includes discrimination against a person based on the person's **record of** having a physical or mental impairment that substantially limits one or more major life activities of such individual.

82. Douglas has a record of mental and physical impairments which substantially affect one or more of his major life activities.

83. Defendant engaged in intentional, and unlawful disability discrimination against Douglas including but not limited to discriminating against Douglas based on his record of a disability.

## FOURTH CLAIM
**[Denial of Reasonable Accommodation]**

84. Douglas incorporates and restates all allegations asserted as though incorporated herein.

85. Prohibited discrimination under the Rehabilitation Act and the ADA includes an employer not reasonably accommodating an employee's disability.

86. Douglas requested a reasonable accommodation to his disability by requesting Defendant to reinstate his scheduled hours from 6:00 - 6:30 a.m. to 3:00-4:00 p.m.

87. Douglas's' request was based on his sleep conditions/patterns relating to his disability, PTSD.

88. Defendant received and understood Douglas's accommodation request.

89. Defendant unreasonably denied Douglas's accommodation request.

90. Defendant cannot meet its burden to demonstrate Douglas's requested accommodation would have imposed an undue hardship on Defendant.

91. Defendant's refusal to provide Douglas his requested, reasonable accommodation, constitutes intentional and unlawful disability discrimination in violation of the Rehabilitation Act and the ADA.

## FIFTH CLAIM
### [Retaliation]

92. Douglas incorporates and restates all allegations asserted as though incorporated herein.

93. The Rehabilitation Act and the ADA prohibit retaliation against an employee who engages in protected activity under these laws.

94. Douglas engaged in protected EEO activity under the Rehabilitation Act and the ADA.

95. On or about July 1, 2019, Douglas initiated the Defendant Agency's internal EEO complaint process by asserting his discrimination claims with the proper EEO counselor.

96. Subsequently, Douglas engaged in a series of protected EEO activities.

97. Contemporaneously with, and/or subsequent to Douglas's protected activities, Defendant gave him the lowest performance he had received in his employment with Defendant.

98. Defendant knew of Douglas's protected activities when Defendant issued his lowest performance rating.

99. A causal connection exists between Douglas' protected activities and Defendant giving him his lowest performance rating.

100. Defendant's conduct constitutes intentional and unlawful retaliation against Douglas in violation of the Rehabilitation Act and the ADA.

## VI. REQUEST FOR RELIEF

WHEREFORE, Defendant's unlawful conduct directly caused Douglas to suffer injuries, damages, and losses;

FURTHER, Douglas respectfully requests this Court to enter judgment in his favor and against Defendant on the claims in issue and award the following relief for Douglas's claims for relief under the Rehabilitation Act, the ADA, and all laws:

(a) To enter a judgment for Douglas and against Defendant, finding Defendant's actions constitute unlawful intentional discrimination in violation of the Rehabilitation Act and the ADA.

(b) To enter a judgment for Douglas and against Defendant, finding the Defendant's actions constitute unlawful retaliation in violation of the Rehabilitation Act and the ADA.

(c) To award Douglas the remedies of damages for loss of wages and all loss of monetary damages to which he is entitled.

(d) To award Douglas compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and all loss of compensatory damages to which he is entitled.

(e) To award Douglas attorney fees and costs.

(f) To award Douglas pre-judgment and post-judgment interest at the appropriate rate provided by law.

(g) To direct Defendant to take such affirmative relief steps as necessary to ensure the effects of Defendant's unlawful employment practices are eliminated and do not continue to affect Douglas's employment opportunities.

(h) Order the Defendant to remove all disciplinary action against Douglas from his official personnel file; and

(i) To award Douglas all other legal and equitable relief to which he is entitled under any law, which this Court deems just, equitable, and proper.

## VII.  JURY TRIAL REQUEST

Under Fed.R.Civ.P. 38 (a)(b)(c), the Rehabilitation Act, the ADA, and all laws providing for a right to trial by jury, Douglas requests a jury trial of all claims and issues.

Dated:  May 12, 2021

Respectfully submitted by:

Murray Law, LLC

/s/ Steven Murray
Steven Murray - Murray Law, LLC
1888 N. Sherman St. - Ste 200
Denver, CO 80203
Phone: 303-396-9952

*Attorneys for Plaintiff Kirk Douglas*

Address of Plaintiff.
116 Silver Lakes Drive
Dumont, CO   80436